## BURTON, MOSES & BROTHER v. MOSES BAUM.

PARTNERSHIP PROPERTY, *Purchased by Partner; Exemption.* One partner may acquire title to partnership property by purchase from the copartnership, and if the purchase is not made with the intent to hinder, delay or defraud the creditors of the copartnership, and the property purchased is such as is exempt from levy and sale on execution under the statutes of the state, may hold it as against creditors of the copartnership.

### *Error from Barton District Court.*

REPLEVIN, brought by *Baum* against *Burton, Moses & Brother.* Trial at the March Term, 1883, and verdict for the plaintiff. Defendants moved for a new trial, which was denied. Thereupon the court adjudged that—

"The plaintiff do have and recover of and from the defendants, Burton, Moses & Brother, the possession of all and singular the tinners' tools described in plaintiff's petition, or the value thereof, one hundred and twenty-five dollars, and damages for the unlawful seizure and detention of said tools in the full sum of one hundred and seventy-five dollars; that in case the said tools are not returned, the total money judgment recovered by plaintiff, Moses Baum, be the sum of three hundred dollars, with interest at the rate of seven per cent. from the date of this judgment, March 7, 1883, and the costs of suit, taxed at $——; and hereof let execution issue."

The defendants allege error, and bring the case to this court.

41—32 KAS.

*C. P. Townsley, Maher & Osmond,* and *W. C. Webb,* for plaintiffs in error.

*G. W. Nimocks,* for defendant in error.

The opinion of the court was delivered by

HURD, J.: Replevin for a quantity of tinners' tools, and damages for their detention brought by the defendant in error against the plaintiffs in error in the district court of Barton county. In 1878, the defendant in error and one Moses Baum were partners in the hardware trade under the name and style of Baum & Baum, and on the 8th day of July, 1879, had a stock in trade amounting to about ten thousand dollars, and the tools sued for were then a part of the stock in trade. On or about the date last mentioned, Hulme and Negbaur became security in a redelivery bond for Baum & Baum in a suit of B. D. Buford & Co. against them. On the same day Baum & Baum executed a chattel mortgage on their stock in trade, including the tinners' tools, to Hulme & Negbaur, for the purpose, as stated in the mortgage, of securing them against their liability as sureties on the redelivery bond. It was stipulated in the mortgage that Hulme & Negbaur should have the exclusive possession and control of the mortgaged property, and the right and authority to sell it in such manner as they might deem advisable, and to conduct the business of selling the property at the old stand of the firm, or at such other place as they might deem best for all concerned. Hulme & Negbaur removed the property to their own store, mingled the goods with their own, and commenced the sale of them under the mortgage. Soon after they took possession of the mortgaged property, the defendant in error purchased from them the tinners' tools in controversy in this suit, and paid for them with his own money. The defendant in error was a tinner by trade, a resident of the state, and the head of a family, and soon after the purchase of the tools removed them to his own premises and used them in his business and trade as a tinner. While he was so using the tools, they were levied upon by the

sheriff on an execution issued on the judgment of Bridge, Beach & Co. against Baum & Baum, and they were afterward sold under the execution to them. At the time of the levy, and also at the time of the sale, the defendant claimed the tools as his own individual property, and that they were exempt from levy and sale on execution. The plaintiff claims title by purchase from Bridge, Beach & Co. The case was tried by a jury, and under the instructions of the court the jury rendered the following verdict:

"We, the jury impaneled and sworn in the above-entitled case, do upon our oaths find for the plaintiff that he have the return of the property described in the affidavit in the case, or in case the said property cannot be returned, the full value thereof, assessed at $125, together with damages for the wrongful detention of said property by defendants, assessed at $175."

The jury also made the following special findings, at the request of the defendants:

"1. Who owned the property now in dispute at the time the sheriff levied upon it? Moses Baum.

"2. Was Moses Baum a tinner by trade at the time of the sheriff's levy? He was.

"3. Did Moses Baum at the time of the levy have such tools for his own use in carrying on his trade as a tinner? He did.

"4. If you find that Moses Baum individually owned said tools, from whom did Moses Baum buy them? From G. H. Hulme."

The jury also made the following special findings at the request of the plaintiff:

"1. Did B. D. Buford & Co. commence a replevin suit for the entire stock of goods of Baum & Baum, and for the tools in controversy? They did.

"2. Did Hulme & Negbaur execute a redelivery bond as sureties in the case of B. D. Buford & Co. against Baum & Baum? They did.

"3. Did Baum & Baum make a sale of all the goods replevied by B. D. Buford & Co. to Hulme & Negbaur, to secure them for signing the redelivery bond, including the tools in controversy? They did.

"4. Did Moses Baum purchase of Hulme & Negbaur the tools in controversy? He did.

"5. Did Hulme & Negbaur have full possession and control of all the goods sold to them by Baum & Baum, including the tools? They did.

"6. Did M. Baum learn the trade of a tinner? He did.

"7. Did M. Baum follow the tinners' trade, after all the goods were taken from him? He did.

"8. Was Moses Baum the head of a family? He was.

"9. What was the value of the tools taken from the plaintiff in this case? One hundred and twenty-five dollars.

"10. What was the value of the use of the tools in controversy? One hundred and seventy-five dollars.

"11. Did M. Baum notify the officer taking the tools that he claimed them as exempt? He did.

"12. Did Moses Baum make a demand for the tools before bringing the suit? He did."

The plaintiff in error filed a motion for a new trial, on the grounds:

"First, excessive damages, appearing to have been given under the influence of passion and prejudice; second, error in the assessment of the amount of recovery for the detention of the property in dispute; third, that the verdict and decision are not sustained by sufficient evidence, and are contrary to law; fourth, error of law occurring at the trial, and excepted to by the defendants."

This motion was argued, and by the court overruled, and the defendant excepted. The court rendered judgment in favor of the defendant in error and against the plaintiffs in error for the possession of the chattels described in the petition, or the value thereof, $125, and damages for the unlawful seizure and detention of the chattels in the sum of $175; and in case the chattels were not returned, a total money judgment of $300, with interest at the rate of 7 per cent. per annum from the date of the judgment.

The defendants below bring the case to this court for review, and now submit these propositions:

"First, whether Moses Baum, being one of the mortgagors, could, by a sale under the mortgage, acquire a title which would be good against the creditors of Baum & Baum; and

second, whether a chattel mortgage given by Baum & Baum to Hulme & Negbaur was not null and void against the creditors of Baum & Baum?"

In the case of *Winstead v. Hulme*, ante, p. 568, the validity of this chattel mortgage. was contested by the creditors of Baum & Baum, and it was held that the mortgage was fraudulent and void. Conceding that the mortgage is fraudulent and void, then the purchase was in law made from Baum & Baum through Hulme & Negbaur as their agents. This purchase was made before the rights of creditors of Baum & Baum had attached by a levy, and while Baum & Baum had the right to dispose of the property. The stock in trade, including the tools in controversy, was kept by Baum & Baum for sale to any person who might desire to purchase. The undisputed testimony is that Moses Baum bought the tools, and paid for them with his own money, took possession and removed them to his own premises, and remained in the exclusive possession of them until they were levied on under the execution in favor of Bridge, Beach & Co. There seems to be no question but that the purchase was in good faith, for a valuable consideration, and was not made to hinder, delay or defraud the creditors of Baum & Baum.

We think the title to the tools in controversy, under the facts in this case, passed to Moses Baum, and that he was the sole owner of them when they were levied on. But this ownership of them did not prevent judgment creditors of Baum & Baum from levying upon and selling them, unless they were exempt from levy and sale under the laws of the state. Were they so exempt? We think they were. The undisputed testimony, and the findings of the jury, are, that Moses Baum was a tinner by trade, the head of a family, and a resident of the state, and that he used and employed the tools in controversy in carrying on his trade, and was so using them at the time they were levied on, and that he notified the officer making the levy that he claimed them as exempt.

We find no error in the record. Judgment affirmed.

All the Justices concurring.